# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 99-196-CR-SEITZ

UNITED STATES OF AMERICA,     )
          *Plaintiff,*            )
                                )

vs.                                    )
                                )

NICOLAS BERGONZOLI,         )
          *Defendant.*          )
                                )

**Unsealed** DE 54

## OBJECTIONS TO PRE-SENTENCE INVESTIGATION

*unsealed portions
of this document
attached hereto*

*Exhibits 1+3 of this document
unsealed per 5/23/03
Order*

- 1 -

JOAQUIN PEREZ, ESQ., 6780 Coral Way, Second Floor, Miami, FL 33155 / (305) 261-4000 / Fax: (305) 662-4067

LAW IN FORCE at present time

Article 35th.  Extradition could be requested, granted or an agreement could be offered according to the public treaties and, if there is none, according to the law.

Extradition will not proceed because of political crimes.

Extradition will not proceed when it is about actions committed prior to the passing of this law.

Article 2nd. This legislative act will rule when it passes.
The President of the Honorable Senate, Amylkar Acosta Medina
The General Secretary of the Honorable Senate,  Pedro Pumarejo Vega
The President of the Honorable House of Representatives, Carlos Ardila Ballesteros
The General Secretary of the Honorable House of Representatives, Diego Vivas Tafur.


Article 35th of the Colombian Constitution  (about Extradition). Article modified by Article 1st of the Legislative Act 1 of 1997.

Article 35  Extradition of Colombians by birth is prohibited.  Extradition of foreigners will not be granted if it is regarding political or opinion crimes.
Colombians that have committed crimes outside the country, and considered as such in the National Legislation, will be prosecuted and judged in Colombia.

^CONSTITUTIONAL COURT OVERRULED THE FOLLOWING through sentence number C-543-98, October 1st, 1998^
Besides, extradition of Colombians by birth will be granted for crimes committed outside the country, and considered as such in the Colombian Crime Law.



**ARTICULO 35. <DE LA EXTRADICION.>.** <Artículo modificado por el artículo **1o.** del Acto Legislativo No. 1 de 1997. El nuevo texto es el siguiente:> La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto, con la ley.

Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana. La Ley reglamentará la materia.

La extradición no procederá por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación de la presente norma.

**<Notas de vigencia>**

- Artículo modificado por el artículo **1o.** del Acto Legislativo No. 1

de 1997, publicado en el Diario Oficial No. 43.195 del 17 de diciembre

de 1995.

**<Legislación anterior>**

**Texto original de la Constitución Política:**

ARTICULO 35. Se prohibe la extradición de colombianos por nacimiento.

No se concederá la extradición de extranjeros por delitos políticos o de

opinión.

Los colombianos que hayan cometido delitos en el exterior, considerados

como tales en la legislación nacional, serán procesados y juzgados en

Colombia.

**ARTICULO 1o.** El artículo 35 de la Constitución Política quedará así:

ARTICULO 35. La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto, con la ley.

&ltAparte entre corchetes { ... } INEXEQUIBLE> Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana. {La Ley reglamentará la materia}.

**ltNotas &de vigencia>**

- Aparte entre corchetes { ... } declarado INEXEQUIBLE por la Corte

Constitucional mediante sentencia C-543-98 del 1o. de octubre de

1998.

La extradición no procederá por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación de la presente norma.

**ltNotas &de vigencia>**

- Inciso declarado exequible por la Corte Constitucional mediante

sentencia C-543-98 del 1o. de octubre de 1998, únicamente por los

cargos analizados en la sentencia

**ARTICULO 2o.** El presente acto legislativo regirá a partir de su promulgación.

El Presidente del honorable Senado de la República, **AMYLKAR ACOSTA MEDINA**

El Secretario General del honorable Senado de la República, **PEDRO PUMAREJO VEGA**

El Presidente de la honorable Cámara de Representantes, **CARLOS ARDILA BALLESTEROS**

El Secretario General de la honorable Cámara de Representantes, **DIEGO VIVAS TAFUR**.

(305) 6624067.

PHONE NO. : 2604551

NOV. 08 2001 11...

De los derechos fundamentales

75

NOTA: Los artículos 1° y 2° de la Ley 333 de 1996 fueron declarados exequibles en los términos de la Sentencia C-374 de agosto 13 de 1997 de la Corte Constitucional, Magistrado Ponente José Gregorio Hernández Galindo.

**[§ 0456] L. 333/96.**

**ART. 33.—De la vigencia.** Esta ley rige a partir de la fecha de su promulgación. No obstante, la extinción del dominio se declarará cualquiera sea la época de la adquisición o destinación ilícita de los bienes o derechos, aun tratándose de situaciones jurídicas existentes con anterioridad a la vigencia de esta ley, (siempre que dicha adquisición o destinación ilícita de los bienes o derechos haya sido realizada, con posterioridad a la existencia de los delitos que dan lugar a esta medida de extinción, así la legislación haya modificado o modifique la denominación jurídica, sin perjuicio del término de prescripción de que trata el artículo 9° de esta ley).*

En todo caso, se entenderá que la adquisición ilícita de los bienes no constituye justo título, causa un grave deterioro de la moral social y es conducta con efectos permanentes.

*NOTAS: 1. La Corte Constitucional en Sentencia C-374 de agosto de 1997, Magistrado Ponente José Gregorio Hernández Galindo, declaró exequible el artículo 33 de la Ley 333 de 1996 e inexequible el aparte entre paréntesis.

2. En este artículo el constituyente establece una lista de penas prohibidas, lista que se adiciona a la prohibición de la pena de muerte (art. 11), la prohibición de las penas crueles, inhumanas o degradantes (art. 12) y de las penas imprescriptibles (art. 28). Además de los artículos mencionados la Ley de Extinción de Dominio contiene en su estructura los siguientes capítulos: capítulo II, de la acción de extinción de dominio; capítulo III, del debido proceso y de la acción de extinción de dominio; capítulo IV, del procedimiento y la competencia; capítulo V, del procedimiento; capítulo VI, de la suspensión del poder dispositivo; capítulo VII, del fondo para la rehabilitación, inversión social y lucha contra el crimen organizado.

**[§ 0459] DOCTRINA.—Confiscación.** "Adjudicación que se hace al Estado, tesoro público o fisco de los bienes de propiedad privada, generalmente de algún reo". (CABANELLAS, Guillermo. Diccionario jurídico elemental. Editorial Heliasta S.R.L., 1979, pág. 7c).

**EXTRADICIÓN**

**[§ 0460] ART. 35.—Modificado. Acto Legislativo 01/97, art. 1°.** La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto con la ley.

Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana. *(La ley reglamentará la materia)*.

No procederá la extradición por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación de la presente norma (§ 1247).

*NOTA: La expresión entre paréntesis fue declarada inexequible por la Corte Constitucional, Sentencia C-543, oct. 1°/98. M.P. Carlos Gaviria Díaz. No obstante, como lo indica la Corte, el legislador no pierde su facultad reglamentaria, pues el fallo ha declarado la inexequibilidad exclusivamente por vicios de forma, única posibilidad de revisión constitucional sobre los actos legislativos.

El resto del texto del articulado del acto legislativo que reformó el artículo 35 ha sido declarado exequible en el mismo fallo, manteniéndose la irretroactividad de la extradición de colombianos.

ENVÍO N° 31 — OCTUBRE 2001 — CONSTITUCIÓN POLÍTICA DE COLOMBIA

**Normas internacionales concordantes:**
— Convención contra la tortura y otros tratos o penas crueles, inhumanas o degradantes. Ley 70 de 1986, artículo 3°.
— Convenciones multilaterales de extradición: Tratado multilateral de extradición de la VII Conferencia Internacional Americana. Ley 74 de 1935; Acuerdo multilateral de extradición del Primer Congreso Boliviano, Ley 26 de 1913.
— Convenciones bilaterales de extradición: Colombia ha celebrado este tipo de convenciones con los siguientes países (a continuación es la ley aprobatoria):

Argentina, Ley 48 de 1825
Bélgica, Ley 74 de 1913, Ley 4°
de 1935. (tratado adicional) y Ley
14 de 1951.
Brasil, Ley 85 de 1939.
Costa Rica, Ley 19 de 1931.
Cuba, Ley 15 de 1932.
Chile, Ley 8° de 1928.
El Salvador, Ley 64 de 1925.
España, Ley 35 de 1892.

Estados Unidos de América,
Ley 66 de 1888 y Ley 8° de 1943.
Francia, Decreto de 12 de
marzo de 1852.
Gran Bretaña, Ley 48 de 1888 y
Ley 15 de 1930.
Guatemala, Ley 40 de 1930.
México, Ley 30 de 1930.
Nicaragua, Ley 39 de 1930.
Panamá, Ley 57 de 1928.

**[§ 0461] C.P.**

**ART. 18.— Extradición.** La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto con la ley.

Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana.

La extradición no procederá por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación del Acto Legislativo 01 de 1997.

NOTA: Mediante Sentencia C-421 de 2001, expediente 3234, la Sala Plena de la Corte Constitucional, M.P. Alfredo Beltrán Sierra, declaró exequible el presente artículo.

**[§ 0462] COMENTARIO.—Tratado de extradición entre Colombia y los Estados Unidos de América.** La Ley 27 del 3 de noviembre de 1980 por medio de la cual se aprobó un nuevo tratado de extradición entre los dos países fue declarada inexequible por la Corte Suprema de Justicia —entonces competente—, en sentencia del 12 de diciembre de 1986.

La Sala Plena de la alta corporación consideró que esa ley adolecía de un vicio de forma: haber sido sancionada por Ministro Delegatario y no por el Presidente de la República, como lo ordena la Constitución en tratándose de leyes aprobatorias de tratados internacionales.

El Jefe de Estado volvió a sancionar la ley aprobatoria, correspondiéndole el N° 68 del 14 de diciembre de 1986, norma que en efecto reprodujo el tratado de extradición; esta nueva ley, sin embargo, fue hallada inconstitucional en providencia del 25 de junio de 1987.

La Corte argumentó que para efectos de la validez jurídica de la Ley 88 de 1986 no era ya suficiente la sanción presidencial sino todo el trámite legislativo previo que había sido omitido. La Sala de Casación Penal de la Corte Suprema de Justicia considera que son aplicables la Ley 86 de mayo 25 de 1888 (aprobatoria de la Convención de reciproca extradición de reos entre la República de Colombia y los Estados Unidos de América), y su convención adicional aprobada por medio de la Ley 8° de marzo 8 de 1943.

**[§ 0463] JURISPRUDENCIA-CONSTITUCIONALIDAD.— La extradición no se aplica a los nacionales colombianos por nacimiento, ni a los extranjeros requeridos por la comisión de delitos políticos.** "(...) En primer término cabe recordar que el demandante considera que esta disposición se opone en todas sus partes a lo dispuesto en los artículos 35 y 93 de la Carta Política, ya que según su concepto, contradicen el contenido del derecho constitucional fundamental a la dignidad humana y

**§ 0463**

① Este artículo es de la Constitución Política de Colombia.

② La Constitución Política de Colombia fecha en la cual entró a regir el 4 de Julio de 1991, abolió la Extradición de Colombianos, artículo 35, pero esto que ...

FROM CPS FST-EDITIO
NOV. 08 2001 11:19AM P3

el principio básico de organización del estado social de derecho, como es el del respeto de los derechos inalienables de la persona humana. Afirma el actor, de conformidad con lo dispuesto en la parte acusada del artículo 17 que es objeto de su demanda, que los tratados públicos internacionales aprobados por Colombia resultarían ser instrumentos jurídicos situados por encima de la Constitución, o con un grado superior en la jerarquía normativa colombiana, y en el sistema de fuentes del derecho, con lo cual se produce la derogatoria de normas constitucionales por disposición de instrumentos internacionales, en un asunto de suma importancia como es el de la extradición.

Como se observó en la parte de resumen de los argumentos de la demanda, el actor dedica buena parte de su escrito a plantear criterios subjetivos de orden práctico y concreto relacionados con la vigencia de los leyes en el tiempo y de algunos tratados públicos y con su aplicación específica, que sin duda escapan a las competencias de esta corporación en el ámbito del control deconstitucionalidad abstracto y general de la ley ante la Constitución Política.

Adicionalmente, el demandante menciona algunos tratados vigentes y suscritos por Colombia y solicita la opinión de la Corte Constitucional por fuera del ámbito de las competencias de esta corporación, las que no pueden ser absueltas en esta sede de justicia constitucional.

Ahora bien, en esta oportunidad esta corporación debe pronunciar su fallo de carácter objetivo y abstracto sobre la constitucionalidad de lo dispuesto en los incisos primero y segundo del artículo 17 del Decreto 100 de 1980, en el que se establecen algunas de las reglas de derecho interno por las cuales se rige el trámite nacional de las extradiciones, claro está, dentro de nuestro régimen constitucional unitario y bajo las reglas constitucionales del Estado de derecho.

En este caso, se trata de la definición nacional de las reglas a las cuales se someten las autoridades públicas para los fines de tramitar la extradición en el caso de las relaciones internacionales y de la colaboración internacional entre estados, para efectos de la persecución del delito, el aseguramiento y sanción de los responsables y del establecimiento del derecho entre las naciones.

Cabe observar, en primer término, que la mencionada disposición de orden legal pertenece a las normas de esa naturaleza, expedidas antes de la promulgación de la nueva Carta Política, lo cual conduce a una interpretación parcialmente diferente de la que se le ha dado hasta la expedición de la que ahora rige, como quiera que entre los cambios sustanciales de orden constitucional y de carácter específico, la nueva Carta Política contiene una cláusula nueva no prevista en la Constitución de 1886 que se relaciona de modo directo con el examen de las expresiones acusadas en este caso, como es el artículo 35 superior (...).

Esta corporación encuentra que la disposición acusada establece que, en general y por principio, la extradición internacional de la que haga parte la República de Colombia, inclusive la de los colombianos como lo advierte el inciso segundo de la disposición acusada, se solicitará, concederá u ofrecerá de acuerdo con los tratados públicos; además, la disposición acusada advierte que en el caso de falta de tratados el Gobierno solicitará, ofrecerá o concederá la extradición de conformidad con lo establecido en el Código de Procedimiento Penal.

De otra parte, según la mencionada regla del inciso segundo del artículo objeto de examen no es posible ofrecer, conceder ni solicitar la extradición de colombianos sin que exista tratado público entre los estados de que se trate en el que se prevea dicho procedimiento de colaboración judicial.

§ 0463

En este sentido, la Corte Constitucional encuentra que en lo que corresponde a la constitucionalidad de los dos incisos acusados del artículo 17 del Código Penal no existe reparo alguno de constitucionalidad, salvo dos precisiones de orden correctivo relacionadas con la extradición de los nacionales colombianos sujetos de la razón de la especial protección constitucional del perseguido político, como quiera que la Carta de 1991, como se vio, prohibió la extradición de nacionales colombianos por nacimiento y la de los extranjeros por delitos políticos y de opinión.

En efecto, en principio, podría pensarse en que la Carta de 1991 proscribió de plano del ordenamiento nacional la posibilidad de contraer compromisos o de cumplir los ya adquiridos en materia de extradición en todos los casos y para todas las personas; empero, esto no es absolutamente cierto, pues el citado artículo 35 únicamente prohíbe la extradición de nacionales por nacimiento y la de los extranjeros por delitos políticos o de opinión, lo que significa que en todo caso las autoridades nacionales no encuentran límite directo y expreso alguno en la Carta Política para cumplir y hacer cumplir los tratados públicos internacionales en materia de extradición de nacionales por adopción y de nacionales que hayan renunciado a su nacionalidad. Además, no existe fundamento constitucional alguno dejar de cumplir los tratados internacionales en materia de extradición de extranjeros, salvo, como se vio, en el caso de los delitos políticos o de opinión.

En este orden de ideas, para la Corte Constitucional es claro que la regulación legal es objeto de acusación en esta oportunidad y que se refiere al trámite de las extradiciones en nuestro ordenamiento penal, encuentra fundamento constitucional en los casos no prohibidos por la Constitución, como se dejó definido, y que, por ello será declarada su exequibilidad por esta corporación, claro está, condicionada a que se entiende que a partir de la Carta Política de 1991, ninguna autoridad pública del orden nacional puede proceder a ofrecer, conceder o solicitar la extradición de colombianos por nacimiento, ni de los extranjeros en el caso de delitos políticos y de opinión.

Empero, aun en estos casos, no se trata de que la Corte considere que se puede producir siquiera remotamente una especie de derogatoria directa y automática de los tratados que prevén y regulan la extradición de los nacionales colombianos, nacimiento por obra de la Constitución Nacional de 1991, como lo plantea el actor, por fuera de las consideraciones mínimas de orden jurídico relacionadas con la armónica concurrencia y unidad de los ordenamientos jurídicos de diverso orden, como es el caso del tema de las relaciones entre la Constitución y los tratados públicos, y la ausencia de jerarquía formal entre ambos ordenamientos jurídicos.

En efecto, ni la Carta Política de 1991 pretende la derogatoria de ningún tratado público por su mandato o disposición, ni los tratados públicos pueden sustituir los términos de la Carta Política, ni condicionan su vigencia, eficacia o aplicación internas, en este sentido, una cosa es la eficacia interna de la prohibición a las autoridades nacionales de extraditar nacionales por nacimiento, por ejemplo, que condiciona la interpretación constitucional de una ley como en esta caso, y otra es la pretendida y absurda eficacia derogatoria de los tratados públicos internacionales, por una u otra disposición constitucional de orden interno, como resulta del parecer del actor.

Lo cierto en este caso es que los de los incisos acusados del artículo 17 hallan fundamento constitucional en los artículos 224, 226, 189 numeral 2° y 150 numeral 16, pero las autoridades de la República de Colombia en el orden interno y dentro de sus

→ a partir del 17 de diciembre de 1997, pero para hechos punibles cometidos a partir de esa fecha

FROM : COPIESTUDIO

competencias nacionales, no pueden proceder a conceder, ofrecer ni a solicitar la extradición de colombianos por nacimiento ni la de los extranjeros por delitos políticos o de opinión, por ser ello inexequible como inequivocadamente lo determina el artículo 35 de la Carta Política.

Esta interpretación, que corrige la que podía darse antes de la vigencia de la Carta Política de 1991, permite mantener y conservar la vigencia de las disposiciones acusadas en este caso, con las limitaciones precisadas en el mencionado artículo 35, dentro del marco de un orden constitucional justo y en armonía con el derecho internacional público (...)". (C. Const., Sent. C-087, feb. 26/97. M.P. Fabio Morón Díaz).

NOTA: Los magistrados Hernando Herrera Vargas, José Gregorio Hernández y Vladimiro Naranjo Mesa salvaron su voto, el cual en sus apartes relevantes afirman:

"Como se sabe, el artículo 35 de la Carta, a cuyo tenor "se prohíbe la extradición de colombianos por nacimiento" y "no se concederá la extradición de extranjeros por delitos políticos o de opinión", fue introducido apenas en 1991.

Ello implica que la referencia a dicho precepto, plasmada en el fallo, que condiciona de modo absoluto la exequibilidad de la normativa legal sobre tratados de extradición, desconoce el hecho real de que, con antelación a la Constitución, habían sido celebrados y perfeccionados por Colombia numerosos convenios internacionales sobre el tema, que en el plano jurídico no desaparecieron, ni cuanto a los compromisos contraídos ni respecto de las obligaciones de ellos derivadas, al solo conjuro de la nueva norma constitucional.

Y no se olvide que, según el artículo 9º de la Constitución Política, las relaciones exteriores del Estado se fundamentan, entre otros valores, en el reconocimiento de los principios del Derecho Internacional aceptados por Colombia.

Uno de tales principios es el denominado "pacta sunt servanda", íntimamente ligado a los orígenes del derecho internacional, que exige a las partes cumplir de buena fe los tratados que celebran.

Si todos los estados adoptaran la posición hoy asumida por esta Corte e hicieran prevalecer las cláusulas de sus constituciones sobre los compromisos internacionales y contraídos por ellos, el Derecho Internacional perdería vigencia y los tratados públicos quedarían despojados de fuerza jurídica vinculante, para convertirse en catálogos de buenas intenciones, susceptibles de ser revocados unilateralmente según los cambios que, por su propia voluntad e intereses coyunturales, introdujeran los estados partes en el orden jurídico interno de cada uno.

Lo mínimo que exige la civilizada convivencia entre estados es el reconocimiento mutuo de que las obligaciones que contraen mediante tratados tienen que ser cumplidas, de manera que los cambios de circunstancias y las modificaciones de los regímenes jurídicos internos, si bien pueden producirse, deben dar lugar a la aplicación de mecanismos de derecho internacional, justamente previstos para esas eventualidades, como la denuncia, pero jamás provocar el incumplimiento de lo pactado con el argumento simplista de que la propia Constitución ha sufrido mutaciones.

La norma demandada ha debido ser declarada exequible, advirtiéndo acerca de la prohibición plasmada en el artículo 35 de la Constitución para los tratados que sobre extradición celebre o haya celebrado Colombia después de su vigencia, pero dejando en claro que, por razón de los compromisos internacionales anteriores, resultaba ineludible el pleno cumplimiento y aplicación de los tratados que para el 7 de julio de 1991 —fecha de entrada en vigor de la Carta Política— ya habían sido perfeccionados con arreglo a los principios y disposiciones del Derecho Internacional. Entendemos, por lo tanto, que el condicionamiento de la exequibilidad en los términos en que quedó redactada la sentencia, implicó un abrupto e inexplicable cambio de jurisprudencia de la Corte, que a su vez, mediante auto de Sala Plena del 21 de abril de 1993 y Sentencia C-276 del 22 de julio del mismo año, había corregido la errónea posición doctrinaria contenida en el

fallo C-027 del 5 de febrero de 1993 —que declaró inexequibles varios artículos del concordato con la Santa Sede, ratificado y plenamente en vigor desde el 2 de julio de 1975—.

Nuestro criterio alrededor de la intangibilidad de los tratados públicos que habían sido ratificados antes de la actual Constitución consiste en que dicho ordenamiento no puede ser aplicado a ellos unilateral y retroactivamente. Se trata de la misma tesis jurídica que llevó a uno de los firmantes a depositar su salvamento de voto en el caso del concordato durante la gestión de la Corte Constitucional de transición (...)".

§ 0464) JURISPRUDENCIA.—Debe probarse la calidad de nacional colombiano para hacer improcedente la extradición. "(...) el señor B es una persona nacida en el extranjero, hijo de padres colombianos pero sin domicilio en la República, por lo que no puede considerarse a la luz de la constitución de 1991, ni a la de la de 1886, como nacional colombiano por nacimiento y por tanto está excluido del amparo constitucional del artículo 35 de la carta;

Súmase a lo anterior, que el señor B se ha identificado durante toda su vida, hasta el 28 de octubre de 1995 inclusive, como ciudadano venezolano; es titular del pasaporte venezolano Nº 6.523.723 y de la cédula de identidad del mismo número expedida por la República de Venezuela (fls. 306 a 307), identificaciones con las que además se encuentra que tramitó documentos en los Estados Unidos de América, como la licencia de conducción (fls. 257 a 264) y la tarjeta de residente extranjero (278 a 283), por lo que nacido en Venezuela y con documentos de identidad de ese Estado, no puede atribuírsele ninguna nacionalidad diferente que la de venezolano.

Respecto al alegato de conclusión presentado por el señor abogado defensor, en cuanto afirma que de conformidad con el artículo 96 de la Constitución Política su defendido tiene derecho a gozar de la doble nacionalidad, sin perder la colombiana, que dice tiene, la Corte se permite precisar:

Es cierto señala el señor defensor que el señor B no ha renunciado a su nacionalidad colombiana, y ello es así por cuanto resulta completamente imposible renunciar a algo que no se tiene, pues el señor B en ningún momento ha sido nacional colombiano por nacimiento: no nació dentro de las fronteras de la República de Colombia y jamás ha estado domiciliado aquí. En tal razón y como nunca ha combinado el ius sanguinis, que lo favorece para su nacionalidad colombiana, con el ius domicilii, que se exige tanto la Constitución actual como también lo hacía la anterior, no puede alegarse colombiano por nacimiento y por tanto no puede renunciar a una nacionalidad que no tiene ahora y no ha tenido nunca, aunque eventualmente podrá llegar a tener si alguna vez fija su domicilio en la República, previo adelantamiento de los trámites que señala la Ley 43 de 1993 y su decreto reglamentario 207 del mismo año, normas aplicables por ser las únicas que permiten obtener la nacionalidad cuando se goza de otra, aunque la otra, como en este caso, no se haya adquirido por carta de naturalización, como explicaba el artículo 9º de la Constitución de 1886, sino por naturalización simple y llana obtenida por haber nacido en otro país.

El señor defensor reclama, con fundamento en el artículo 3º de la Ley 43 de 1993, el reconocimiento de la nacionalidad colombiana de B por ser titular de la cédula de ciudadanía Nº 79.824.673 de Santafé de Bogotá D.C., y al respecto anota La Corte:

La mencionada norma señala: "De la prueba de la nacionalidad. Para todos los efectos legales, se considerarán como pruebas de la nacionalidad colombiana la tarjeta de identidad o la cédula

§ 0464

*de ciudadanía expedida por la Registraduría Nacional del Estado Civil o el registro civil para los menores de 7 años, acompañado de la prueba del domicilio cuando sea el caso".*

Este artículo contiene evidentemente una orden perentoria de reconocer probada la nacionalidad del titular de uno de los documentos allí anotados, pero ello no depende exclusivamente de ese hecho, sino que debe estar "acompañado de la prueba del domicilio cuando sea el caso".

Naturalmente la expresión "cuando sea el caso", debe determinarse con arreglo a la Constitución y las leyes y con vista en tales normatividades, la Corte puede concluir que la situación del señor B es uno de los casos a los que se refiere el artículo 3° de la Ley 43 de 1993.

Sin embargo, como atrás se ha declarado, el señor B es un ciudadano venezolano, hijo de padres colombianos, que ha nacido en territorio extranjero.

Siendo ello así, tiene respecto de la nacionalidad de colombiano por nacimiento, únicamente la expectativa de obtenerla cuando, de conformidad con el artículo 96 de la Constitución Política de 1991, "se domiciliare en la República", requisito que de igual manera exigía el literal b del ordinal 1°, del artículo 8° de la anterior Constitución.

En este órden de ideas y por tratarse de un asunto atinente a la nacionalidad, se entiende por domicilio, la definición que de él entrega el inciso 3° del artículo 2° de la propia Ley 43 de 1993, que señala: "Por domicilio se entiende la residencia en Colombia acompañada del ánimo de permanecer en el territorio nacional, de acuerdo con las normas pertinentes del Código Civil".

Surge claro de lo expuesto, que para los colombianos que hayan perdido la nacionalidad colombiana, por razón de la aplicación del artículo 9° de la Constitución anterior, o para aquéllos que nunca la han tenido pero tienen la expectativa de tenerla, no basta la mera exhibición de los documentos a que se refiere el artículo 3° de la Ley 43 de 1993, sino que a ellos deben agregar pruebas claras y contundentes del ánimo de permanecer en el territorio nacional, situación que no se demuestra con otra cosa que con hechos de los que se deduzca claramente la vocación de permanencia en el territorio nacional. (...).

Ahora bien, la obtención de cualquiera de tales documentos, tarjeta de identidad, cédula de ciudadanía, o registro civil de nacimiento, debe hacerse con arreglo a las leyes, no en contravía con ellas, pues no debe olvidarse que uno de los elementos esenciales del acceso a la nacionalidad colombiana, por nacimiento o por adopción, es la manifestación de la "voluntad de respaldar y acatar la Constitución Política y las leyes de la República" y por supuesto no tiene tal voluntad quien adelanta los trámites para obtener uno de tales documentos, en contravención de la ley que rige para su caso concreto". (CSJ, Conc. mar 4/97, Rad. 11.35. M.P. Carlos Eduardo Mejía Escobar).

**[§ 0465 a 0468]**  Reservados.

## DERECHO DE ASILO

**[§ 0469]  ART. 36.**—Se reconoce el derecho de asilo en los términos previstos en la ley (§ 1286).

NOTA: Normas internacionales concordantes:

— Declaración universal de derechos humanos, artículo 14, derecho de asilo (§ 7024).

— Convención americana sobre derechos humanos, ley 16 de 1972, artículo 22, derecho de circulación y residencia (§ 0310-1).

**[§ 0470]  COMENTARIO.**—Valor del derecho internacional. El derecho de asilo o amparo internacional tiene como fuente el derecho de gentes, consagrado en convenciones internacionales y no en instrumentos legales de orden interno. Por eso, cuando la Constitución en el artículo comentado remite a la ley, se refiere más expresamente a las leyes aprobatorias de tratados o convenciones internacionales y no a la mera reglamentación interna. Vale la pena señalar que la Carta consagra el asilo dentro del capítulo de los derechos fundamentales. Ahora bien, el ejercicio de este derecho queda sometido a las leyes aprobatorias de tratados internacionales, no siendo por lo tanto un derecho subjetivo de aplicación inmediata.

**[§ 0471]**  D. 2371/98.

**ART. 141.**—Podrá solicitar visa de residente, refugiado o asilado el extranjero así calificado por el Ministerio de Relaciones Exteriores, de acuerdo con los tratados y convenciones sobre la materia ratificados por el Gobierno Colombiano.

**[§ 0472 a 0475]**  Reservados.

## DERECHO DE REUNIÓN

**[§ 0476]  ART. 37.**—Toda parte del pueblo puede reunirse y manifestarse pública y pacíficamente. Sólo la ley podrá establecer de manera expresa los casos en los cuales se podrá limitar el ejercicio de este derecho (§ 1036, 1400, 1834, 2761, 2762, 2766, 4756).

NOTA: Normas internacionales concordantes:

— Declaración universal de derechos humanos, art. 20, libertad de reunión (§ 7030).

— Pacto internacional de derechos civiles y políticos, L. 74/68, art. 21, derecho a reunión pacífica.

— Convención americana sobre derechos humanos, L. 16/72, art. 15, derecho de reunión.

— Convención sobre los derechos del niño, L. 12/91, art. 15. (§ 0587-15).

Desarrollo legal de la norma:

Código Nacional de Policía, D.L. 1355/70, arts. 102 a 107.

**[§ 0476-1]**  L. 74/68. Pacto Internacional de Derechos Civiles y Políticos.

**ART. 21.**—Se reconoce el derecho de reunión pacífica. El ejercicio de tal derecho sólo podrá estar sujeto a las restricciones previstas por la ley que sean necesarias en una sociedad democrática, en interés de la seguridad nacional, de la seguridad pública o del orden público, o para proteger la salud o la moral públicas o los derechos y libertades de los demás.

**[§ 0477]**  L. 16/72. Convención Americana sobre Derechos Humanos, Pacto de San José.

**ART. 15.**—Derecho de reunión. Se reconoce el derecho de reunión pacífica y sin armas. El ejercicio de tal derecho sólo puede estar sujeto a las restricciones previstas por la ley, que sean necesarias en una sociedad democrática, en interés de la seguridad nacional, de la seguridad o del orden públicos o para proteger la salud o la moral públicas o los derechos o libertades de los demás.

**[§ 0478]  JURISPRUDENCIA-TUTELA.**—*Ejercicio público y pacífico.* "El artículo 46 de la Constitución de 1886 sólo consagraba el derecho de reunión mientras que la nueva norma incorpora el de manifestación. En ambos casos garantiza su ejercicio público y pacífico. La norma aprobada no establece la facultad que se otorgaba a las autoridades de disolver toda reunión que degenerara en asonada o tumulto o que obstruyera las vías públicas. En su lugar se establece que sólo la ley podrá señalar expresamente los casos en los cuales puede limitarse el ejercicio de este derecho.

*Esto es tomado de la constitución Política Colombiana;*

DIARIO OFICIAL. AÑO CXXVII. N. 40078. 4, OCTUBRE, 1991. PAG 3.

## DECRETO NUMERO 2265 DE 1991
### (Octubre 4)

POR EL CUAL SE ADOPTAN COMO LEGISLACION PERMANENTE UNAS DISPOSICIONES EXPEDIDAS EN EJERCICIO DE LAS FACULTADES DEL ESTADO DE SITIO.

El Presidente de la República de Colombia, en ejercicio de la atribución conferida por el artículo transitorio 8o. de la Constitución Política, y

CONSIDERANDO:

Que el Gobierno Nacional se encuentra autorizado por el artículo transitorio 8o. de la Constitución Política para convertir en legislación permanente, los decretos expedidos en ejercicio de las facultades del Estado de Sitio, que la Comisión Especial no haya improbado;

Que la Comisión Especial creada por el artículo transitorio 6o. de la Constitución Política en ejercicio de la atribución conferida en el literal a) de la misma disposición, ha decidido no improbar las normas de los Decretos legislativos 2047 de 1990, 2372 de 1990, 3030 de 1990, 303 de 1990 y 1303 de 1991, que se adoptan como legislación permanente,

DECRETA:

ARTICULO 1o. Adóptanse como legislación permanente las siguientes disposiciones del Decreto legislativo 2047 de 1990:

Artículo 3o.  Si el juez fuere competente por razón de la naturaleza del hecho, pero no estuviere conociendo del mismo, procederá a dictar auto cabeza de proceso, a recibir la indagatoria y a definir la situación jurídica en los términos y condiciones previstos en el artículo anterior, y simultáneamente, establecerá por medios expeditos la existencia de proceso sobre los hechos punibles confesados, remitiendo la actuación a quien tuviera el expediente tan pronto recibe información en tal sentido, junto con el detenido y con los bienes si los hubiere.

Si no obtuviere información dentro de los cinco (5) días siguientes, continuará adelantando el proceso.

Artículo 4o. Si el juez ante quien se hizo la presentación no fuere competente para investigar los hechos punibles, recibirá sin demora la versión libre y espontánea, y remitirá la persona, de manera inmediata, con la respectiva actuación, al competente para la instrucción del asunto a fin de que la aboque de inmediato, poniéndole los bienes a su disposición. El juez competente para decir la situación jurídica, dictará auto de cabeza de proceso, recibirá la injurada y resolverá la situación jurídica y lo referente a la libertad del sindicado, conforme a las previsiones del artículo 3o.

Parágrafo. Para la recepción de indagatoria, los términos a que se refiere el artículo 412 del Código de Procedimiento Penal se empezarán a contar a partir del día siguiente al de aquel en que el privado de libertad sea puesto a su disposición.

Artículo 5o. El Ministerio de Justicia podrá disponer el cambio de radicación del proceso en los casos y mediante el procedimiento señalados en el Decreto legislativo 2490 de 1988.


ATTACHMENT/EXHIBIT  III

Artículo 7o. Si alguna de las personas que hubiere intervenido en la comisión de los hechos punibles confesados no se encontrare en las condiciones señaladas en el artículo 1o. de este decreto, el juez que esté conociendo de los hechos investigará por separado estos comportamientos, rompiéndose la unidad procesal.

Artículo 9o. Los beneficios establecidos en este decreto para los casos de confesión y colaboración con la justicia, son incompatibles con los consagrados para estas mismas conductas en las leyes penales, pero el beneficiario podrá acogerse a cualquiera de ellos, a su elección.

Artículo 11. En la respectiva sentencia se dispondrá el decomiso a favor del Estado de todos los bienes denunciados por el procesado en su confesión, salvo los derechos de terceros de buena fe y de los demás cuya relación directa con el delito se acredite por cualquier otro medio probatorio, quien quiera que sea su dueño.

Parágrafo. Todo lo anterior se aplicará sin perjuicio de las normas vigentes sobre destinación provisional y definitiva de los bienes vinculados o derivados de los delitos a que se refiere este decreto.

Artículo 12. Si dentro de los delitos confesados hubiere alguno cometido en el exterior, el juez allegará las pruebas pertinentes mediante los procedimientos establecidos en el Capítulo III, del Título I, del Libro Quinto del Código de Procedimiento Penal, para incorporarlas al proceso de acuerdo con lo previsto en el artículo 15 del Código Penal.

En estos casos no procederá la extradición por tales hechos, salvo que se alleguen al proceso pruebas que los desvirtúen o los alteren sustancialmente.

Artículo 13. En lo no previsto en este decreto se adelantará el proceso por las normas especiales o generales establecidas para los delitos a que se refiere este decreto.


ARTICULO 2o. Adóptanse como legislación permanente las siguientes disposiciones del Decreto legislativo 2372 de 1990:

Artículo 1o. El artículo 2o. del Decreto 2047 de 1990, quedará así:

Artículo 2o. Si el juez que recibe la confesión es el competente para conocer de los hechos punibles, y estuviere adelantando el proceso, continuará la actuación, recibirá la indagatoria y procederá a definir la situación jurídica dentro de los términos de ley, si fuere el caso, disponiendo la libertad inmediata del imputado sin caución y con el compromiso de hacer presentación personal cuando se le requiera por razón del proceso, si se tratare únicamente de los delitos de porte ilegal de armas y concierto para delinquir. En estos casos tampoco habrá incautación ni decomiso de bienes, salvo los relacionados con las armas mismas.

Si confiesa otros delitos, o los confesados son diferentes a los anteriores, se proferirá detención preventiva sin derecho a excarcelación.

Si los delitos confesados son conexos, se adelantará un solo proceso. Si algunos no lo fueren, se investigarán por separado y conocerá de ellos el mismo juez, aunque no sean de su competencia, y se acumularán todos en la etapa del juicio. En esta última etapa sólo habrá lugar a excarcelación cuando haya transcurrido m s de un (1) año desde la fecha de la ejecutoria de la primera resolución acusatoria, sin que se haya dictado sentencia.

Artículo 3o. Si durante el término de privación de la libertad por razón de los delitos confesados llegare una solicitud de extradición o una denuncia penal por el hecho no confesado, el procesado será juzgado por él por el mismo juez que esté adelantando o adelantó el proceso.

Si confiesa la comisión de tales hechos tendrá derecho a todos los beneficios señalados en el Decreto 2047 de 1990, siempre que la confesión pueda ser base de la sentencia. En caso contrario se adelantará la investigación y si fuere condenado por ellos, no tendrá derecho a las rebajas en él señaladas pero no habrá lugar a extradición por estos mismos hechos.

Artículo 4o. Los procesados de acuerdo con los procedimientos señalados en el Decreto 2047 de 1990, y en este Decreto, perderán los derechos que hubieren podido obtener por la confesión si incurren en fuga o intentan realizarla.

ARTICULO 3o. Adóptanse como legislación permanente las siguientes disposiciones del Decreto Legislativo 3030 de 1990:

Artículo 1o. Quienes antes del 5 de septiembre de 1990 hayan cometido cualquiera de los delitos establecidos en la Ley 30 de 1986 y demás normas que la adicionen o modifican, o cualquiera de los delitos de competencia de los jueces de orden público, tendrán derecho a rebaja de pena o condena de ejecución condicional, para los casos que expresamente se señalen en este decreto, cuando se cumplen los siguientes requisitos:

1. Que la persona no esté privada de la libertad comparezca voluntariamente ante un juez penal o promiscuo de la República, y haga confesión libre y espontánea de cualquiera de los hechos punibles a que se refiere el inciso primero de este artículo, en el que haya intervenido como autor o partícipe, siempre y cuando que ella pueda servir de base para dictar sentencia condenatoria, por determinarse el hecho punible con las condiciones de tiempo, modo y lugar de realización que permitan identificarlo claramente, y que no se aleguen las causales de justificación, inculpabilidad o impunibilidad.

El confesante acudirá a la diligencia acompañado de apoderado, o el Juez le nombrará defensor de oficio para el efecto. La retractación de los hechos confesados hará perder todos los beneficios.

2. Que en dicha confesión denuncie bienes que hayan servido para realizar los ilícitos, o que provengan de su ejecución en forma directa o indirecta, si los hubiere. Este requisito servirá para determinar la rebaja de la pena a que se refiere el artículo 9o. de este decreto.

Si se trata de armas, o de cualquier otro bien que esté fuera del comercio deberá hacer entrega de los mismos al Juez, si los tuviere en su poder al momento de hacer la confesión, o posibilitar su incautación de manera efectiva.

Parágrafo II. El Director Nacional y los Directores Seccionales de Instrucción Criminal suministrará a los interesados toda la información y protección necesaria para garantizar el adecuado desarrollo de esta norma, y prestarán al juez todo el apoyo que se requiere para trasladar al confesante ante el Juez que sea competente para conocer de los delitos confesados, coordinando para ello las actividades requeridas con las autoridades judiciales, civiles, policivas y militares.

Es Juez competente para conocer del proceso el de Orden Público que esté adelantando la investigación por cualquiera de los hechos confesados. Si fueren varios, cualquiera de ellos a prevención. Sino se estuviere adelantando en el país investigación por ninguno de ellos, o si hubiere sido cometido en el exterior, será competente el Juez de Orden Público o quien el Director Nacional o Seccional de Instrucción Criminal, o el de Orden Público, según al caso, asigne la investigación.

Si el proceso por delito confesado lo estuviere adelantando un Juez ordinario, perderá la competencia, lo que corresponderá al Juez de Orden Público a quien el Director Nacional o Seccional de Instrucción Criminal, o de Orden Público, según sea el caso, le asigne la investigación.

Parágrafo III. En ningún caso, los beneficios establecidos en este decreto se aplicarán a los delitos cometidos con posterioridad al 6 de septiembre de 1990, salvo lo dispuesto en el parágrafó I de esta disposición.

Artículo 2o. El Juez que reciba la confesión deberá dar aviso por vía telegráfica, o por cualquier otro medio escrito idóneo al Director Seccional de Instrucción Criminal, al Procurador Delegado para los Derechos Humanos y al provincial, informando el nombre completo y el número y clase de documento de identidad correspondiente de quienes comparecieren a confesar.

Cuando se defina la situación jurídica del procesado, se informará nuevamente a dichos funcionarios sobre la naturaleza de la decisión y sobre los delitos confesados.

Artículo 3o. Recibida la información por el Procurador Delegado para los Derechos Humanos, éste, por medio de un funcionario del Ministerio Público, tomará las medidas necesarias para garantizar el respeto pleno de los Derechos Humanos de los procesados.

Artículo 4o. El Juez competente para conocer del proceso abrirá la investigación, la continuará y procederá a definir la situación jurídica del procesado dentro del término de ley teniendo como indagatoria la confesión hecha por éste; si considerare oportuno ampliarla previamente, procederá a hacerlo.

Si se tratare únicamente de los delitos de porte ilegal de armas y concierto para delinquir, en el mismo acto dispondrá la libertad inmediata del imputado, sin caución y con el compromiso de hacer presentación personal cuando se le requiera por razón del proceso. En estos casos no habrá incautación ni decomiso de bienes, salvo las armas, o cualquier otro bien que esté fuera del comercio.

Si confesa además otros delitos, se adelantará investigación por éstos en forma separada para cada uno, salvo que sean conexos, y se proferirá auto de detención preventiva en ellos sin derecho a excarcelación. Si sólo confiesa delitos diferentes a los señalados en el inciso segundo de este artículo, se proferirá auto de detención preventivo por cada uno de ellos, sin derecho a excarcelación.

En los casos señalados en estos dos últimos incisos, los bienes estarán sujetos al régimen establecido en los artículos 53 y siguientes del Decreto 2790 de 1990 (6), y con relación a ellos el Juez deberá cumplir las obligaciones señaladas en dichas normas para el jefe de la Unidad de Policía Judicial, pudiendo comisionar para ello a otros jueces o a funcionarios de la Policía Judicial.

Artículo 6o. El Ministerio de Justicia revocará los autos de detención con fines de extradición una vez se ejecutorie la sentencia o sentencias en los respectivos procesos si hubiere condena por alguno de ellos, o se hubiere dictado auto de cesación de procedimiento en el evento a que se refiere el inciso segundo del artículo 8o. de este decreto.

Artículo 7o. El Juez que haya asumido el conocimiento de los delitos confesados será competente para conocer de todos los procesos que se adelanten contra el procesado, así algunos de los delitos no sean de su competencia, o alguno de los coautores o partícipes no estén en las condiciones señaladas en el artículo 1o. de este decreto, salvo el fuero constitucional o legal respecto de los aforados únicamente. Adelantará un solo proceso con los que fueren conexos, y tramitará por separado los que no lo fueren, pero se acumularán todos en la etapa del

juicio, cuando fuere posible. Por los delitos no confesados no habrá lugar a las rebajas previstas en este decreto.

En caso de concurso de delitos, la pena imponible será la del delito al que corresponda una pena mayor dentro del proceso, hecha previamente la determinación para cada uno de ellos por razón de las circunstancias agravantes y atenuantes de la punibilidad y las rebajas de penas a que haya lugar aumentada hasta en otro tanto.

El trámite para los delitos a que se refiere este artículo en los procesos adelantados por los Jueces de Orden Público, será el establecido en el Decreto legislativo 2790 de 1990, pero hasta el 16 de enero de 1991 la investigación la adelantará también el juez de conocimiento. Las pruebas serán practicadas por la unidad de policía judicial que señale el Juez competente.

Artículo 8o. Cuando entre los delitos que se investigan haya alguno cometido tanto en el país como en el exterior, sólo podrá dictarse el auto de cierre de investigación, cuando hayan transcurrido por lo menos nueve meses de haberse enviado a la representación diplomática del respectivo país, el exhorto pidiendo la práctica o traslado de pruebas, si éstas aún no han llegado. Pasado este término, se calificará el proceso con el material probatorio que obre en el mismo.

Si uno de los delitos hubiere sido cometido íntegramente en el exterior, se adelantará para el proceso separado. Si las pruebas pedidas no hubieren llegado dentro del año siguiente a su petición, el juez dispondrá la libertad provisional del sindicado si no estuviere siendo procesado por otros delitos, mediante la constitución de una caución que garantice suficientemente la presentación periódica y la prohibición de salir del país mientras dure el proceso. Durante este período no habrá lugar a extradición por delitos cometidos antes del 5 de septiembre de 1990. Dispondrá la reapertura de la investigación por este delito, y continuará el trámite de los otros, si los hubiere. Pasado un año más sin que hubieren llegado las pruebas, procederá a calificar el mérito del sumario.

Artículo 9o. Si después de calificado el mérito del sumario en alguno de los procesos adelantados o dictado sentencia condenatoria, llegaren nuevas denuncias, adelantará la investigación el Juez de Orden Público o especializado que señale el Director Nacional o Seccional de Instrucción Criminal, o el de Orden Público, según el caso. Si el procesado o sentenciado aceptare haberlos cometido, tendrá todos los beneficios señalados en este decreto. En caso contrario se continuará la investigación, y si fuere condenado por ellos no tendrá derecho a las rebajas en él señaladas.

Si hubiere sido condenado previamente por hechos confesados, o hubiere sido beneficiado con cesación de procedimiento de acuerdo con lo previsto en el inciso segundo del artículo 8o. de este decreto, aun cuando en el momento de presentarse la nueva petición ya estuviere disfrutando de libertad.

Si la persona hubiere confesado delitos sancionados con pena privativa de la libertad, en caso de condena por los nuevos delitos la pena se integrará con la que se le hubiere impuesto en el anterior proceso, para efectos de la acumulación jurídica de la sanción, cuando la que sirvió para determinarla haya sido mayor en éste que la correspondiente del nuevo proceso. En caso contrario, se tomará como base para la acumulación jurídica la de éste, teniéndose en cuenta los delitos del anterior proceso para el cálculo del incremento de la pena por razón del concurso, siendo la pena total para ambos procesos esta última, sobre la cual se descontará la que ya se hubiere pagado.

La pena imponible en el nuevo proceso se determinará de acuerdo con lo dispuesto en el inciso segundo del artículo 7o. de este decreto.

Artículo 10! Cuando el procesado haya confesado el delito del porte ilegal de armas o el de concierto para delinquir, o su concurso, el Juez suspenderá la ejecución de la sentencia en los términos señalados en los artículos 69, 70 y 71 del Código Penal, pero sólo respecto de estos delitos.

Si además hubiere confesado otros delitos, o los confesados fueren distintos de los señalados en el inciso anterior, el Juez condenará por éstos, estableciendo la pena a que haya lugar de acuerdo con lo previsto en el inciso segundo del artículo 7o. de este decreto, descontando previamente para los delitos confesados las siguientes rebajas:

a) En una tercera parte por razón de la confesión;

b) Hasta en otra sexta parte por razón de la colaboración que se haya prestado para descubrir los demás autores o partícipes del delito y por la cuantía de los bienes denunciados, y

c) Las que estén establecidas en la legislación penal o en leyes especiales, si el procesado prefiere estas en los términos señalados en el artículo siguiente.

Artículo 11. Los beneficios establecidos en este decreto para los casos de confesión y colaboración con la justicia son incompatibles con los consagrados para estas mismas conductas en las leyes penales, pero el beneficiario podrá acogerse a cualquiera de ellos, a su elección.

Artículo 12. En los delitos a que se refiere este decreto no habrá lugar a la suspensión de la detención preventiva ni de la ejecución de la pena, pero podrá concederse la detención hospitalaria cuando el procesado o condenado sufriere grave enfermedad, o a la imputada le faltaren cuatro (4) semanas para el parto, o si no han transcurrido dos (2) meses desde la fecha en que dio a luz. En los eventos anteriores, se exigirá por el juez certificado del médico legista, quien determinará periódicamente sobre la necesidad de que continúe la detención en la forma prevista en el inciso anterior. Esta medida sólo podrá ser autorizada, previo concepto favorable del Agente del Ministerio Público.

Artículo 13. Sin perjuicio de lo dispuesto en el artículo 14 de este decreto, en la respectiva sentencia se dispondrá el decomiso a favor del Estado de todos los bienes denunciados por el acusado en su confesión, así figuren a nombre de otras personas, salvo los derechos de terceros de buena fe, y de lo demás cuya relación directa con el delito se acredite por cualquier medio probatorio dentro del proceso, quien quiera que sea su dueño, a quien se escuchará en incidente.

Parágrafo. Todo lo anterior se aplicará sin perjuicio de las normas vigentes sobre destinación provisional y definitiva de los bienes vinculados o derivados de los delitos a que se refiere este decreto.

Artículo 14. En la sentencia que se profiera como culminación de los procesos por delitos a que se refiere este decreto, se condenará al pago de los perjuicios causados por el hecho punible, y los bienes decomisados se dedicarán preferencialmente al pago de dichos perjuicios.

Artículo 15. En lo no previsto por este decreto se adelantará el proceso de conformidad con las normas contenidas en el Decreto 2790 de 1990 y las que adicionen o reformen, y en subsidio, por las del Código de Procedimiento Penal.

Artículo 16. Este decreto rige a partir de la fecha de su publicación, y subroga en lo pertinente los Decretos Legislativos 2047, 2147 y 2372 de 1990.


ARTICULO 4o. Adóptanse como legislación permanente las siguientes disposiciones del Decreto legislativo 303 de 1990:

Artículo 1o. Las personas que se sometan a la justicia en las condiciones y por razón de los delitos adelante contemplados, tendrán derecho a las rebajas de pena previstas, por delito confesado, cometido antes de la fecha de la entrega, siempre que cumplan efectivamente la pena privativa de la libertad impuesta en la sentencia respectiva como se prevé en este decreto. En este último caso se exceptúa la cesación de procedimiento a que se refiere el inciso tercero del artículo 9o. del mismo decreto.

Artículo 2o. Los hechos o conductas delictivas imputables a procesado que por desvirtuar el régimen de sometimiento a la justicia previsto en los Decretos legislativos 2047 y 3030 de 1990, hagan perder cualquiera de los beneficios allí establecidos, deberán estar probados dentro del proceso, y si se trata de hecho punible, sólo operarán a partir de la ejecutoria de la sentencia que lo declara.

Artículo 3o. El artículo 5o. del Decreto legislativo 3030 de 1990, quedará así:

Artículo 5o. En el auto de apertura de investigación el juez dispondrá las siguientes diligencias:

a) A través del Ministerio de Relaciones Exteriores, solicitará a las autoridades extranjeras, el envío de todas las pruebas y demás informaciones que las autoridades competentes del respectivo país dispongan con respecto a procesos o investigaciones que en tal país cursen contra el procesado, ya se trate de los mismos hechos o de otros que puedan ser materia de investigación en Colombia. Para tal efecto deberá precisar claramente el nombre y demás datos que permitan la identificación del procesado, así como los motivos de la indagación.

Solicitará, igualmente, el envío de información relacionada con las solicitudes de extradición que se hubieren formulado, o pudiesen formularse contra el procesado;

b) Pedirá al Ministerio de Justicia el envío de toda la documentación existente en contra del procesado por razón de peticiones de extradición, para agregarla al proceso;

c) Pedirá a todos los juzgados del país por conducto de la Dirección Nacional de Instrucción Criminal, el envío de todos los procesos en los que esté vinculado el procesado como autor o partícipe;

d) Solicitará informes al Departamento Administrativo de Seguridad, a la Policía Nacional y demás autoridades de policía judicial sobre las investigaciones que se estén adelantando contra el procesado;

e) Dispondrá la práctica de las pruebas que considere conducentes para confirmar o infirmar las aseveraciones hechas por el procesado en su confesión, y de las demás que considere pertinentes para esclarecer los hechos;

f) Dará aviso al Ministerio Público para que adelante lo relativo a la indemnización de perjuicios en los términos señalados en el Decreto 2790 de 1990;

g) Solicitará a las autoridades nacionales el envío de las pruebas que se hayan producido válidamente en otro proceso, dentro o fuera del país, y que tiendan a establecer los hechos materia de la investigación, en los términos del artículo 256 del Código de Procedimiento Penal.

Parágrafo. Las previsiones consagradas en este artículo se aplicarán sin perjuicio de lo previsto en tratados públicos, convenciones, usos internacionales y los acuerdos válidamente celebrados entre gobiernos.

Artículo 4o. En el trámite de los procesos de que tratan los Decretos legislativos 2047 y 3030 de 1990, la sentencia condenatoria también deberá ser consultada ante el Tribunal de Orden Público.

ARTICULO 5o. Adóptanse como legislación permanente las siguientes disposiciones del Decreto legislativo 1303 de 1990:

Artículo 1o. En los delitos de competencia de los Jueces de Orden Público, las relaciones de las autoridades colombianas con las extranjeras para todo lo relacionado con la práctica y el traslado de pruebas o medios de prueba, se regirá por lo que dispongan los tratados públicos, las convenciones internacionales, los acuerdos entre gobiernos y los usos internacionalmente consagrados. A falta de estos, o en lo no previsto en ellos, se aplicarán las disposiciones del presente decreto.

Artículo 2o. Cuando el Juez de Orden Público tenga fundados elementos de juicio que le permitan concluir que el procesado ha cometido delitos en el exterior que estén siendo investigados o que puedan ser investigados oficiosamente, solicitará por intermedio de la secretaría jurídica del Departamento Administrativo de la Presidencia de la República, informes a los países que corresponda, sobre los procesos en curso y sobre la existencia de las pruebas que puedan ser aportadas a la investigación por él adelantadas.

Artículo 3o.  Cuando un Juez de Orden Público deba solicitar a una autoridad extranjera una prueba o información relacionada con un proceso, enviará la petición por intermedio de la secretaría jurídica del Departamento Administrativo de la Presidencia de la República, la cual dará trámite inmediato a la petición. Si la petición carece de algún elemento esencial para su trámite, dicha dependencia coordinará con la oficina de origen para que se subsane la omisión.

La Secretaría Jurídica del Departamento Administrativo de la Presidencia de la República coordinará la transcripción de la solicitud al idioma del país al cual se le formula y le dará curso elevando las solicitudes correspondientes ante las autoridades extranjeras, directamente o por conducto del Ministerio de Relaciones Exteriores, cuando a ello hubiere lugar, mediante el procedimiento de exhortos o cartas rogatorias.

Artículo 4o. Las solicitudes de asistencia judicial que se formulen a las autoridades extranjeras, para el recaudo o traslado de pruebas que obren en diligencias o procesos de  competencia de los Jueces de Orden Público, deberán hacerse por escrito y podrán efectuarse señalando, entre otros, los siguientes aspectos:

A. El nombre de la autoridad encargada de la investigación, identificada con su denominación o código correspondiente.

B. La descripción del asunto, la índole de la investigación, la mención sumaria de los hechos con indicación del o los procesados si se conocieren, y la calificación jurídica provisional que a estos corresponda, cuando a ello hubiere lugar.

C. La descripción completa de las pruebas e informaciones que se solicitan. Cuando no se conozcan las pruebas, la mención de los hechos que se quieren acreditar.

Si se trata de prueba trasladada, se especificará el documento que debe ser enviado o reproducido, determinándose el proceso en el que se encuentra y la autoridad que lo tramita.

D. Las copias auténticas de los documentos o pruebas que se quieran corroborar.

E. Si se trata de pruebas que deban ser practicadas, se señalarán éstas, se especificarán las formalidades especiales para su recepción, y se darán las informaciones adicionales que se consideren útiles para el adecuado cumplimiento de la petición.

F. Para la recepción de testimonios, se especificarán los hechos concretos sobre los cuales debe recaer el interrogatorio.

G. Cualquier otra información que pueda ser de utilidad a la autoridad a la cual se formula la solicitud, para su mejor cumplimiento.

Parágrafo I. Se presume la autenticidad de los documentos remitidos y de las pruebas practicadas por autoridad extranjera, siempre que su traslado o su trámite se realice por petición de autoridad colombiana.

Parágrafo II. La petición de traslado de pruebas o práctica de las mismas, formulada a las autoridades extranjeras, incluirá la solicitud de que se certifique que ellas fueron practicadas válidamente, de conformidad con la respectiva ley procesal.

Artículo 5o. Cuando se trate de solicitudes formuladas por autoridades extranjeras, relacionadas con pruebas que puedan encontrarse en procesos de competencia de los Jueces de Orden Público, estas serán tramitadas por intermedio de la Secretaría Jurídica del Departamento Administrativo la presidencia de la República, para lo cual la autoridad que reciba la solicitud la enviará a dicha dependencia.

Cuando tales solicitudes se formulen por vía diplomática, el Ministerio de Relaciones Exteriores remitirá la solicitud de manera inmediata a la Secretaria Jurídica del Departamento Administrativo de la Presidencia de la República para su trámite.

Artículo 6o.  El Gobierno Nacional determinará si el trámite de la solicitud afecta la seguridad u otros intereses esenciales del país, o el adelantamiento de otras investigaciones, o si la información no contiene los elementos requeridos para darle curso, en cuyo caso se dará aviso inmediato, a través de la Secretaría Jurídica del Departamento Administrativo de la Presidencia de la República, a la autoridad encargada de coordinar el trámite en el país solicitante.

Si se condiciona la solicitud al cumplimiento de ciertos requisitos por el país solicitante, éste podrá insistir en su tramitación comprometiéndose a cumplirlos en un plazo prudencial.

Si la solicitud fue formulada por vía diplomática, la devolución o las diligencias realizadas se remitirán por la misma vía.

Artículo 7o. Si la solicitud fuere procedente se enviará por dicha Secretaría al Director Seccional de Orden Público que corresponda, o a la autoridad que a juicio del Secretario Jurídico del Departamento Administrativo de la Presidencia de la República pueda cumplir en forma expedita la comisión, cuando se trate de la práctica de pruebas.

Artículo 8o.  La práctica de las pruebas se efectuará de conformidad con las normas legales internas del país que deba realizarlas.

Cuando la solicitud establezca que se realice conforme a determinadas condiciones, las mismas se practicarán de conformidad con lo pedido, siempre que no se contraríen los derechos y garantías consagrados en las leyes internas del país que deba realizarlas.

Artículo 9o. El trámite y diligenciamiento de las solicitudes de que trata este Decreto, serán reservados.

Artículo 10.  El presente Decreto rige modifica en lo pertinente los artículos 641 a 646 del Código de Procedimiento Penal y el artículo 3o. del Decreto 303 de 1991.

ARTICULO 6o.  El presente Decreto rige a partir de la fecha de su publicación y deroga las disposiciones que le sean contrarias.

Publíquese y cúmplase.

Dado en Santa Fe de Bogotá, D. C., a
4 de octubre de 1991.

CESAR GAVIRIA TRUJILLO

El Ministro de Justicia,
FERNANDO CARRILLO FLOREZ.

- Decreto 3030 del 14 de diciembre de 1990, por medio del cual se establecen los requisitos para la rebaja de penas por confesión de delitos cometidos hasta el 5 de septiembre de 1990.

- Decreto 303 del 29 de enero de 1991, que modifica el Decreto 3030 de 1990, y establece la rebaja de penas y no extradición sin necesidad de confesión.

- Decreto 2047, del 5 de septiembre de
1990: crea mecanismos para incentivar el
sometimiento a la justicia de quienes hayan
cometido delitos relacionados con los
motivos de perturbación del orden público.
Este Decreto fue adicionado por medio del
Decreto 2147, del 14 de septiembre de
1990, que faculta al Procurador Delegado
para los Derechos Humanos para que una
vez recibida la información del juez que
recepcionó la confesión de las personas a
que se refiere el Decreto 2047, comisione a
un funcionario a fin de que tome las medidas
necesarias para garantizar el respeto pleno
de los derechos de los procesados y velar
porque se brinde la debida seguridad a los
declarantes confesos.

**ARTICULO 1o.** El artículo 35 de la Constitución Política quedará así:

ARTICULO 35. La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto, con la ley.

&ltAparte entre corchetes { ... } INEXEQUIBLE> Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana. {La Ley reglamentará la materia}.

**ltNotas &de vigencia>**

- Aparté entre corchetes { ... } declarado INEXEQUIBLE por la Corte

Constitucional mediante sentencia C-543-98 del 1o. de octubre de

1998.

La extradición no procederá por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación de la presente norma.

**ltNotas &de vigencia>**

- Inciso declarado exequible por la Corte Constitucional mediante

sentencia C-543-98 del 1o. de octubre de 1998, únicamente por los

cargos analizados en la sentencia

**ARTICULO 2o.** El presente acto legislativo regirá a partir de su promulgación.

El Presidente del honorable Senado de la República, **AMYLKAR ACOSTA MEDINA**

El Secretario General del honorable Senado de la República, **PEDRO PUMAREJO VEGA**

El Presidente de la honorable Cámara de Representantes, **CARLOS ÁRDILA BALLESTEROS**

El Secretario General de la honorable Cámara de Representantes, **DIEGO VIVAS TAFUR**.

**ARTICULO 35. <DE LA EXTRADICION.>.** <Artículo modificado por el artículo **1o.** del Acto Legislativo No. 1 de 1997. El nuevo texto es el siguiente:> La extradición se podrá solicitar, conceder u ofrecer de acuerdo con los tratados públicos y, en su defecto, con la ley.

Además, la extradición de los colombianos por nacimiento se concederá por delitos cometidos en el exterior, considerados como tales en la legislación penal colombiana. La Ley reglamentará la materia.

La extradición no procederá por delitos políticos.

No procederá la extradición cuando se trate de hechos cometidos con anterioridad a la promulgación de la presente norma.

**<Notas de vigencia>**

- Artículo modificado por el artículo **1o.** del Acto Legislativo No. 1

de 1997, publicado en el Diario Oficial No. 43.195 del 17 de diciembre

de 1995.

**<Legislación anterior>**

**Texto original de la Constitución Política:**

ARTICULO 35. Se prohibe la extradición de colombianos por nacimiento.

No se concederá la extradición de extranjeros por delitos políticos o de

opinión.

Los colombianos que hayan cometido delitos en el exterior, considerados

como tales en la legislación nacional, serán procesados y juzgados en

Colombia.

THROUGH WHICH SOME PROVISIONS ISSUED UNDER STATE OF SIEGE ARE ADOPTED AS PERMANENT LEGISLATION.

The President of the Republic of Colombia, exercising his duty conferred under the transitory article 8 of the Political Constitution, and

HAVING INTO ACCOUNT

That the National Government is authorized under the transitory article 8 of the Political Constitution to turn into permanent law those decrees issued exercising the State of Siege and not approved by the Special Commission;

That the Special Commission created under the transitory article 6 of the Political Constitution exercising its duty attributed in the numeral a. in the same article, has decided not to approve the norms from the decrees 2047 of 1990, 2372 of 1990, 3030 of 1990, 303 of 1990 and 1303 of 1991, that have been adopted as permanent law,

... Decree 2047, 1990...

Article 9.  The benefits established in this decree for the cases regarding confession and collaboration with justice, are incompatible with the ones established for these same conducts under the criminal law, but the beneficiary could have recourse to the justice under either of them, at his own will.

Article 11.  In the judgment will be arranged the confiscation by the Estate of all properties declared by the defendant in his (her) confession, except the rights of others who have acted in good faith; and all others found to be related to the crime through any other means, whoever the owner might be.

...Decree 3030, 1990...

Article 1.  Anyone who before September 5, 1990 has committed any of the crimes established in the Law 30 of 1986 and other norms added to it or which have modified it, or any of the crimes under the Public Order Judges' competence, will have the right to reduced penalty or conditional execution sentence, for the cases specifically pointed in this decree, when the following requirements are met:...

...

If it is regarding, exclusively, the illegal carriage of weapons and intention to commit a crime, in the same act will be arranged the immediate release of the individual, with no fine and with the commitment of showing personally anytime he (she) is required because of the process...

...

Article 6.  The Secretary of Justice will revoke the judicial decree for detention with aims of extradition, once the sentence or sentences are executed in each process, if there were any, or if a judicial decree for suspending the process was issued in the event referred in this decree, second paragraph article 8...

...

Article 10.  When the defendant has confessed the crime of illegally carrying a weapon or intention to commit a crime, or carrying it out, the Judge will suspend the execution of the sentence under the terms established in the Criminal Law, articles 69, 70 and 71, but only regarding these crimes.

If (the defendant) had also confessed other crimes, or the names confessed were different than the ones indicated in the previous paragraph, the Judge will rule the sentence according with what it is establish in this decree, second paragraph, article 7, and deducting previously for the confessed crimes the following:

   a.  One third for what was confessed;

   b.  Up to one sixth for collaboration leading to dismantle the other perpetrators of the crime and for the value of the properties denounced, and

   c.  The deductions established in the Crime Law or in special laws, if the defendant prefers these in the terms indicated on the following paragraph.

Article 11.  The benefits established in this decree for confession cases and collaboration with the justice are incompatible with the ones established for these same behaviors in the Crime Law, but the beneficiary could have recourse to either of them, at his own will.

Article 12.  Regarding the crimes referred by this decree there will be no suspension of preventive detention  nor the execution of the sentence, but hospital detention could be granted if the defendant or the convicted person suffers a serious illness, or if the convicted woman will give birth in four weeks, or if not 2 months have passed since she has given birth. In the previous events, the judge will demand a medical certificate and this same legal physician will also determine periodically the need to continue the detention under the circumstances established in the passing remark. This measure only could be authorized, prior favorable concept of the Public Ministry Representative.

Article 4th.  Adopt as a permanent legislation the following dispositions of the legislative Decree 303 of 1990:

Article 1st. The individuals who surrendered to justice under the conditions and because of the crimes previously established, will have the right to reduced sentences because of confessed crime, carried out before the date they turned themselves in, as long as they observe effectively the sentence of being deprived of their freedom as it is established in

this decree. In this last case it is exempted the suspension of the case as it is referred in the third paragraph, article 9 on the same decree.

Article 2nd. The criminal actions or behaviors attributed to the defendant, that under the justice submission procedure established in the legislative decrees 2047 and 3030 of 1990, may cause the lost of any benefits indicated there, must be proved in the process, and if it is about a punitive action, it will only operate after the execution of the sentence that declare his (her) guilt.

Article 6th. The present Decree rules from the date of publication and overrules all other contrary provisions.

Publish it and observe it.

Signed in Santa Fe de Bogota, D.C,
October 4, 1991

CESAR GAVIRIA TRUJILLO

The Secretary of Justice,
FERNANDO CARRILLO FLOREZ.