## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| *UNITED STATES OF AMERICA,* ) | Case No. 99-00196-Cr- |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| *NICHOLAS BERGONZOLI,* ) | |
| ) | |
| *Defendants.* ) | |
| ———————————————————— ) | |

### FABIO OCHOA VASQUEZ'S
### EMERGENCY MOTION TO UNSEAL COURT FILE

FABIO OCHOA-VASQUEZ is a defendant on trial in Case No. 99-6153-Cr-Moore. Pursuant to Local Rule 5.4 and the First, Fifth and Sixth Amendments to the United States Constitution, he moves the court for an unsealing the court file involving Nicholas Bergonzoli, which to date has disappeared from the court docketing system.

Mr. Bergonzoli is in custody at the F.D.C.-Miami, on a writ of habeas corpus ad testificandum authorized by Judge Moore. Mr. Bergonzoli is a prospective witness in the Ochoa trial, which is in progress and scheduled to resume on Tuesday May 27, 2003 at 8:30 a.m. Before Mr. Bergonzoli testifies, Mr. Ochoa's counsel seeks to review the court file pertaining to his arrest, conviction, sentence and plea agreement with the government. To date, our effort to review the Bergonzoli court file has been stymied, as the Clerk of Court will not acknowledge the existence of his case.

-1-

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone: 305-371-6421 • Fax: 305-358-2006 • www.RoyBlack.com

Our research indicates that on October 3, 1995, a one-count cocaine importation indictment was returned in the District of Connecticut against Nicholas Bergonzoli.[1]  A bench warrant was issued the same day, listing Bergonzoli's address only as "Medellin, Colombia."  After an initial appearance in a "closed Miami federal courtroom," Bergonzoli was released on bond.  The docket sheets from Bergonzoli's Connecticut case contain no entries between the return of the indictment in 1995 and an order entered on March 12, 1999, transferring the case to the Southern District of Florida under Fed. R. Crim. P. 20.  The removal order was signed by both Bergonzoli and his attorney, Joaquin Perez.  The bare case file also contains a copy of Bergonzoli's arrest warrant, indicating that the warrant had been "executed" on Bergonzoli that same date, March 12, 1999.  Mysteriously, however, the warrant was not actually *filed* in the Clerk's Office until *July 20, 2000*  -- 1½ years later.  Moreover, neither the docket sheets nor the court file reflect the filing of any *motion* seeking the removal order, any *hearing* on a written or *ore tenus* motion or any *personal appearance in court* by Bergonzoli at any time.  The removal order just appears out of thin air.

On March 18, 1999, a Deputy Clerk in the District of Connecticut wrote a cover letter to the Clerk of this Court with certified copies of Bergonzoli's Connecticut docket sheets, the indictment and the Rule 20 order.  The letter was stamped with the Miami **Case No. 99-00196-Cr-Davis**.  In other words, the govern-

---

[1] Mr. Ochoa previously sought this same relief before Judge Moore and filed a motion to dismiss which included numerous exhibits documenting these events.  *See* MOTION TO DISMISS, COMPOSITE EXHIBIT 18, Docket Sheets, Indictment and Removal Order, *United States v. Bergonzoli*, Case No. 3:95cr144PCD (D. Conn.).

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone: 305-371-6421 • Fax: 305-358-2006 • www.RoyBlack.com

ment secured Bergonzoli's transfer to this jurisdiction, by apparently representing that Bergonzoli either had another case in Miami or that the already filed case should be finalized here. **However, neither the Clerk's Office nor PACER reflect the existence of a case against anyone named "Bergonzoli" nor *any* case assigned to case number 99-00196**. The surrounding case numbers, however, do exist. On March 16, 1999, *United States v. Rodriguez*, Case No. 99-195-Cr-Seitz (S.D. Fla.), was filed, and on March 24, 1999, *United States v. Bruce*, Case No. 99-197-Cr (S.D. Fla.), was filed. Therefore, Case No. 99-196 presumably would have had to have been filed between these dates. The entire matter has disappeared.

## MEMORANDUM

In 1993, the Eleventh Circuit in *United States v. Valenti*, 987 F.2d 708 (11th Cir.), *cert. denied sub nom. Times Publ. Co. v. U.S. Dist. Court for the Middle Dist. of Fla.*, 510 U.S. 907 (1993), issued a series of rulings involving the use by the judges in the Middle District of Florida of sealed proceedings and a dual docketing system for certain proceedings in federal criminal cases. The Eleventh Circuit held that it was unconstitutional under the First Amendment for the Middle District to record the occurrence of even properly sealed events and pleadings on a separate docket that was itself completely sealed from public view. "The Middle District's maintenance of a public and a sealed docket is inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings." *Valenti*, 987 F.2d at 715. *Accord CBS, Inc. v. District Court*, 765 F.2d 823, 826 (9th Cir. 1985)

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard; Suite 1300 · Miami, Florida 33131 · Phone: 305-371-6421 · Fax: 305-358-2006 · www.RoyBlack.com

("a two-tier system, open and closed" erodes public confidence in the accuracy of records, and thus denies the public and press its right to meaningful access). *See also In re Providence Journal Co., Inc.*, 293 F.3d 1, 13 (1st Cir. 2002) (district court's policy of not filing legal memoranda violated both the First Amendment and the common law right of access to judicial records).

Unless the press and the public at least have a way to discover that sealed events have occurred, they have no ability to even challenge the constitutionality of the procedures. Accordingly, the Eleventh Circuit held that the Middle District's dual docketing system was unconstitutional under the First Amendment. Such a system would effectively prevent the press and the public from even "seeking to exercise their constitutional right of access." *Id.*

The Eleventh Circuit also held that even a more traditional sealing order "must be supported with a finding that the denial of access is necessary to preserve higher values, and is narrowly tailored to serve that interest." *Valenti*, 987 F.2d at 714, quoting *Press Enterprise Co. v. Superior Court of California for Riverside County*, 464 U.S. 501, 510 (1984). *See also Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992) (before proceedings can be sealed, the denial of access must be supported by "a compelling governmental interest, and is narrowly tailored to . . . that interest") (citations omitted); *Providence Journal*, 293 F.3d at 11 ("the presumption in favor of access can only be overcome 'by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest'"), quoting *Press Enterprise*, 464 U.S. at 510. *See generally* Local Rule 5.4 (requiring that motions to seal "shall specifically state the period of

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 · Miami, Florida 33131 · Phone: 305-371-6421 · Fax: 305-358-2006 · www.RoyBlack.com

time that the party seeks to have the matter maintained under seal" and requiring specific sealing orders).

Compliance with these standards also means that even properly sealed proceedings must be unsealed "when the danger of prejudice has passed." *Valenti*, 987 F.2d at 714 (citation omitted). Moreover, these findings must be expressly made. Either before or after sealing a proceeding, a district court must "articulate 'findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id.* at 713, quoting *Press Enterprise*, 464 U.S. at 510. *See generally* Local Rule 5.4 and Proposed Sealed Filing Cover Sheet.

Finally, all *ex parte* requests by the government for secrecy should be viewed with caution and strictly scrutinized:

> The Executive Branch seeks to uproot people's lives, outside the public eye, and behind a closed door. Democracies die behind closed doors . . . . When government begins closing doors, it selectively controls information rightfully belonging to the people. Selective information is misinformation. The Framers of the First Amendment "did not trust any government to separate the true from the false for us."

*Detroit Free Press, et al. v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) (citation omitted).

As demonstrated in the Motion to Dismiss filed with Judge Moore, the government has sought to secrete the criminal record of -- and the government's agreementw with -- Bergonzoli "behind a closed door" through the rampant use of improper sealing procedures. Despite the fact that *Valenti* was decided by the

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone: 305-371-6421 • Fax: 305-358-2006 • www.RoyBlack.com

Eleventh Circuit in 1993, the government has convinced this Court to use the same type of "dual docketing system" prohibited by *Valenti*.

Secret proceedings appear to have been held with regard to Bergonzoli but without any docket entries appearing publicly in the docket sheets -- a clear violation of *Valenti*. Indeed, the government has to date successfully concealed the existence of an *entire* criminal case.

Due process "embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18 (1938). "The value of a judicial proceeding . . . is substantially diluted" where the court proceeds *ex parte* because the Court "does not have available the fundamental instrument of judicial judgment: an adversary proceeding in which both parties participate." *Carroll v. Princess Anne*, 393 U.S. 175, 183 (1968).[2] A court's duty to avoid *ex parte* contacts is embodied in Canon 3(A)(4) of the Code of Judicial Conduct for United States judges, which provides: "A judge should . . . neither initiate nor consider *ex parte* communications concerning a pending or impending proceeding." Indeed, the potential for

---

[2] *See also United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987) (district court must bear in mind that *ex parte* communications are disfavored and to be avoided wherever possible); *United States v. Martinez*, 667 F.2d 886, 889-90 (10th Cir. 1981) (fundamental fairness of trial violated by mistrial granted on grounds agreed to by the prosecutors and trial court *ex parte*), *cert. denied*, 456 U.S. 1008 (1982); *United States v. Wolfson*, 634 F.2d 1217, 1221 (9th Cir. 1980) (improper for prosecution to make or for court to receive *ex parte* communication bearing on sentence); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1141 (2d Cir.) ("*in camera* proceedings during a criminal trial are manifestly conceptually incompatible with our system of criminal jurisprudence), *cert. denied*, 439 U.S. 913 (1978); *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975) (government submitted sentencing memorandum to court without providing copy to defense; court "emphatically disapproves it, as a prejudicial and improper *ex parte* communication between government counsel and the court").

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone: 305-371-6421 • Fax: 305-358-2006 • www.RoyBlack.com

disqualification of the Court is an independent reason why the Court must be extremely cautious in agreeing to employ *ex parte* procedures. The use of *ex parte* proceedings may be grounds for disqualification even when they are used in the course of the judge's otherwise legitimate duties.[3]

Accordingly, the Eleventh Circuit has emphasized that *ex parte, in camera* proceedings should only be resorted to under the most extraordinary circumstances

---

[3] *See United States v. Craven*, 239 F.3d 91 (1st Cir. 2001) (improper for sentencing judge to have *ex parte* discussions with court appointed experts about defendant's downward departure, reversing departure and disqualifying the judge); *United States v. Wolfson*, 634 F.2d 1217, 1221 (9th Cir. 1980) (improper for prosecution to make or for court to receive *ex parte* communication bearing on sentence); *S.C.A. Services, Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977) (confidential inquiry made by judge to his brother, a senior partner in the firm representing party, "create[d] an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system"); *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975) (government submitted sentencing memorandum to court without providing copy to defense; court "emphatically disapproves it, as a prejudicial and improper *ex parte* communication between government counsel and the court"); *Schmidt v. United States*, 115 F.2d 394, 398 (6th Cir. 1940) (judge should have recused himself where an affidavit alleged, *inter alia* that the judge had been informed of the facts of the case by the prosecutor in advance of trial); *McFadden v. United States,* 63 F.2d 111, 112 (7th Cir. 1933) (Judge should have disqualified himself where he received an *ex parte* communication relating to one defendant); *Nations v. United States*, 14 F.2d 507, 509-510 (8th Cir.) (judge should have disqualified himself on basis of affidavit stating, among other things, that persons interested in the prosecution had given judge incriminating facts about the defendant), *cert. denied*, 273 U.S. 735 (1926). *See generally United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987) ("[a]n *ex parte* proceeding places a substantial burden on the trial judge to perform what is naturally and properly the function of an advocate"); *Cortese v. United States*, 782 F.2d 845, 852 (9th Cir. 1986) ("[a] court should not permit the actions of another, whether or not a party, to threaten the fact or appearance of judicial impartiality"); *LaChappell v. Moran*, 699 F.2d 560, 566 (1st Cir. 1983) (*ex parte* communications between judge and partisans "shadow the impartiality, or at least the appearance of impartiality, of any judicial proceeding"); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1141 (2d Cir.) ("*in camera* proceedings during a criminal trial are manifestly conceptually incompatible with our system of criminal jurisprudence), *cert. denied*, 439 U.S. 913 (1978); *Greico v. Meachum*, 533 F.2d 713, 719 (1st Cir.) ("*ex parte* communications shadow the impartiality, or at least the appearance of impartiality, of any judicial proceeding"), *cert. denied*, 429 U.S. 858 (1976); *Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir. 1969) ("not only is it a gross breach of the appearance of justice when the defendant's principal adversary is given private access to the ear of the Court, it is a dangerous procedure").

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 • Miami, Florida 33131 • Phone: 305-371-6421 • Fax: 305-358-2006 • www.RoyBlack.com

to protect legitimate governmental interests, such as the safety of witnesses, or the integrity of the judicial process itself. *See In Re Paradyne*, 803 F.2d 604 (11th Cir. 1986). *See also Briscoe v. Kusper*, 435 F.2d 1046, 1057 (7th Cir. 1971) ("[r]eliance upon evidence considered *in camera* as the basis for decision is fundamentally inimical to due process" and holding that only "exceptional circumstances" could justify "determinations based upon documents which interested parties may not examine"); *Matter of Kitchen*, 706 F.2d 1266, 1272 (2d Cir. 1983) (requiring "particularized and compelling reasons" justifying *ex parte* submissions in civil contempt proceedings involving grand jury witness).

In *Paradyne*, the Eleventh Circuit granted a petition for a writ of mandamus prohibiting a district court from conducting *ex parte* and *in camera* proceedings to determine whether defense counsel representing a corporation and various of its officers during a grand jury investigation had conflicts of interests. Since one such proceeding had already occurred prior to the issuance of the writ, "to ameliorate any unfair advantage -- or the appearance thereof" -- the Eleventh Circuit in *Paradyne* also ordered that defense counsel were entitled to a transcript of the previously conducted *ex parte* proceeding. *Id.* at 612. "[T]o refuse defendants access to the information presented to the court *ex parte* would subject them to a trial unaware of the accusations leveled . . . ." *Id.*

The defendant is entitled to the same relief granted in *Paradyne* -- release of the already existing but sealed proceedings and transcripts of the *ex parte* proceedings which have already occurred herein.   Such relief is appropriate because the

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 · Miami, Florida 33131 · Phone: 305-371-6421 · Fax: 305-358-2006 · www.RoyBlack.com

government's conduct has substantially impaired the defendant's ability to (1) prepare for trial and (2) present his defense.

The court in *United States v. Dinsio*, 468 F.2d 1392 (9th Cir. 1972), also condemned the use of *ex parte* procedures.  In that case, a grand jury ordered a witness to provide fingerprint exemplars.  In support of its order, the prosecutor submitted to the court an FBI affidavit stating the grounds on which it based the order.  The court read the affidavit *in camera* and ruled that the grand jury's request was reasonable.  The court refused to disclose the contents of the affidavit to the witness and held her in contempt for refusing to comply with the order.  The Ninth Circuit reversed, holding that the witness was entitled as a matter of due process to an opportunity to inspect the affidavit in an effort to demonstrate just cause why he should not be held in contempt.

> Dinsio cannot be expected to demonstrate just cause in a factual vacuum. She cannot be relegated to the status of "a blind man striking at an invisible foe . . . ." Nothing in the record before us provides any basis upon which we could conclude that these disclosures could or would impermissibly compromise the secrecy of the grand jury proceedings. Moreover, modest breaches of grand jury secrecy may well be required when nondisclosure would defeat fundamental constitutional rights, including the right to due process of law.

468 F.2d at 1394.[4]

---

[4] While the Supreme Court has now held that the government does not have to show "reasonableness" prior to issuing subpoenas for handwriting, *see Mara v. United States*, 410 U.S. 19 (1973), the reasoning of *Dinsio* in qualifying the use of *in camera* and *ex parte* proceedings has maintained its vitality.

Black, Srebnick, Kornspan & Stumpf
201 S. Biscayne Boulevard, Suite 1300 · Miami, Florida 33131 · Phone: 305-371-6421 · Fax: 305-358-2006 · www.RoyBlack.com

## CONCLUSION

Under the reasoning of *Valenti*, *Paradyne*, *Dinsio* and Local Rule 5.4, the defendant is entitled to access to the file in the Bergonzoli case.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 S. Biscayne Boulevard, Suite 1300
Miami, Florida 33131
(305) 371-6421  Fax: (305) 358-2006

By: _____
**ROY BLACK**
Florida Bar No. 126088
**HOWARD M. SREBNICK**
Florida Bar No. 919063
Counsel for Fabio Ochoa Vasquez

## CERTIFICATE OF SERVICE

I CERTIFY that a true copy of this pleading was faxed on __5|22|03__ to
4:00 P.M.
the following counsel of record:

Edward Ryan, Esq.
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard Suite 700
Ft. Lauderdale, Florida 33394
fx: (954) 356-7336

By: _____
**HOWARD M. SREBNICK**

-10-